**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**TIMOTHY SCOTT DICKERSON**                                                    **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 5:14-cv-9-DCB-MTP**

**CAROLYN W. COLVIN,**
**Commissioner of Social Security Administration**                                    **DEFENDANT**

<u>**REPORT AND RECOMMENDATION**</u>

Plaintiff Timothy Scott Dickerson brings this action pursuant to 42 U.S.C. § 405(g)

seeking judicial review of a final decision of the Commissioner of Social Security

Administration denying his claim for disability insurance benefits and supplemental security

income.  This matter is now before the Court on Plaintiff's Motion for Judgment on the

Pleadings [17] and Defendant's Motion to Affirm the Commissioner's Decision [19].  Having

considered the pleadings, the record, and the applicable law, the undersigned recommends that

the Commissioner's decision be AFFIRMED.

**PROCEDURAL HISTORY**

On November 22, 2010, Plaintiff applied for disability insurance benefits, and on

December 8, 2010, Plaintiff applied for supplemental security income.  In both applications,

Plaintiff alleged that the disability onset date was January 7, 2009.  Plaintiff's claim was denied

initially and upon reconsideration.  Thereafter, Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"). (Administrative Record [6] at 21.)[1]

---

[1] For ease of reference and pursuant to the Court's Scheduling Order [3], the
administrative record is cited to herein by reference to the Court's docket number and docket
page number in the federal court record (not the Administrative Record page number).

On April 4, 2012, a hearing was convened before ALJ Lanier Williams.  On August 8, 2012, a second hearing was convened before the ALJ.  The ALJ heard testimony from Plaintiff, his wife, and Joe H. Hargett, a vocational expert ("VE").  On October 9, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. ([6] at 21-35.)  Plaintiff appealed this decision to the Appeals Council.  The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. ([6] at 8-10.)

On February 3, 2014, Plaintiff filed a Complaint in this Court, seeking an order reversing the Commissioner's final decision and directing the Commissioner to award benefits to Plaintiff or, in the alternative, remanding this case for a new hearing. (Complaint [1].)  The Commissioner answered the complaint, denying that Plaintiff is entitled to any relief.  The parties briefed the issues in this matter pursuant to the Court's Order [3], and the matter is now ripe for decision.

## MEDICAL/FACTUAL HISTORY

Plaintiff was thirty-five years old at the time of the hearings before the ALJ.  Plaintiff completed high school and testified that he attended special education classes.  His past work history includes employment as a maintenance technician, air conditioning technician, electrician, and saw mill operator. ([6] at 110; 122.)

On January 7, 2009, while Plaintiff was working at Franklin Lumber Company, he was struck in the head by a piece of falling lumber.  After the accident, Dr. W. B. Larkin Jr. treated Plaintiff for a concussion and abrasion in his eye.  Plaintiff was also treated at Franklin County Memorial Hospital, where radiographs were taken showing that he did not suffer a fracture of the skull.  The next day, Plaintiff was treated at Southwest Eye Center for blurred vision and "wood in right eye." ([6] at 204; 320-21.)

On January 22, 2009, Dr. Howard Katz examined Plaintiff.  At that time, Plaintiff complained of headaches, jaw pain, irritability, and insomnia.  Dr. Katz assessment was that Plaintiff suffered from a minor head injury with no loss of consciousness, daily headaches, temporomandibular joint ("TMJ") dysfunction, and right medical and lateral epicondylitis (tennis elbow). ([6] at 247-250.)

On May 12, 2009, Plaintiff underwent a neuropsychological evaluation by Dr. Edward Manning.  Dr. Manning administered the Wechsler Abbreviated Scale of Intelligence ("WASI") test, and Plaintiff received a full-scale IQ of 62, verbal IQ of 64, and nonverbal performance IQ of 66.  Plaintiff continued treatment with Dr. Manning, and on June 18, 2009, Dr. Manning encouraged Plaintiff to resume as many normal activities as possible.  On July 16, 2009, Dr. Manning again encouraged Plaintiff to resume activities, including house repairs such as painting. ([6] at 208-15.)

On July 16, 2009, Dr. Katz stated, "I see no reason the [Plaintiff] cannot perform light and sedentary work as defined by the Department of Labor."  By August 27, 2009, Plaintiff reported to Dr. Katz that "he has been feeling much better, doing a lot more and does occasionally have to take a pain pill."  Dr. Katz indicated that Plaintiff's wife was concerned that Plaintiff's activities would affect his workers' compensation claim and requested a written statement allowing Plaintiff to perform activities, such as fishing and yard work.  Dr. Katz informed her that Plaintiff's activities would not affect Plaintiff's claim and noted that he had consistently encouraged Plaintiff to do as much as possible.  On October 13, 2009, Plaintiff informed Dr. Katz that he was not suffering from memory loss, anxiety, or depression. ([6] at 220-22; 227.)

3

However, in early January, 2010, Plaintiff stopped taking his depression and anxiety medication, and on January 11, 2010, he was admitted to the hospital for acute altered mental status.  Plaintiff "deteriorated into a state of agitated hopelessness, and began to experience active suicidal thoughts."  He also threatened to kill his parents.  Plaintiff was given Cymbalta, and within twenty-four hours, Plaintiff began to feel the effects of the medication and his mood began to stabilize.  Plaintiff's Global Assessment of Functioning scores greatly improved during his stay at the hospital. ([6] at 251-260.)

On July 23, 2010, Plaintiff was admitted into Brentwood Behavioral Healthcare for depression and aggressive behavior.  Psychiatrist Krishan K. Gupta treated Plaintiff and prescribed him Pristiq, to which he responded well.  At the time of his discharge on July 29, 2010, Dr. Gupta noted that Plaintiff was in touch with reality and not homicidal or suicidal.  Dr. Gupta diagnosed Plaintiff with mood disorder, adjustment disorder, and post concussion syndrome. ([6] at 411-12.)

On May 26, 2012, Plaintiff underwent a consultative examination by a psychologist, Dr. Brian Thomas.  Dr. Thomas administered the Wechsler Adult Intelligence Scale-Forth Edition ("WAIS-IV") test, and Plaintiff received a full-scale IQ of 60, verbal comprehension score of 66, and perceptual reasoning score of 69.  Dr. Thomas, however, stated that Plaintiff's "performance on a performance validity indicator suggests questionable effort and the obtained results may not provide the clearest indication of his functioning." ([6] at 490.)

During the relevant time period, Plaintiff also received treatment for TMJ disfunction, gout, and cervical and thoracic spinal issues.  The ALJ included an extensive discussion of these treatments in his written opinion. ([6] at 24-26.)

4

**BURDEN OF PROOF**

In *Harrell v. Bowen*, the Fifth Circuit detailed the shifting burden of proof that applies to

disability determinations:

> An individual applying for disability and SSI benefits bears the initial burden of
> proving that he is disabled for purposes of the Social Security Act.  Once the
> claimant satisfies his initial burden, the [Commissioner] then bears the burden of
> establishing that the claimant is capable of performing substantial gainful activity
> and therefore, not disabled.  In determining whether or not a claimant is capable of
> performing substantial gainful activity, the [Commissioner] utilizes a five-step
> sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):
>
>> 1.  An individual who is working and engaging in substantial gainful activity
>> will not be found disabled regardless of the medical findings.
>>
>> 2.  An individual who does not have a 'severe impairment' will not be found
>> to be disabled.
>>
>> 3.  An individual who meets or equals a listed impairment in Appendix 1 of
>> the regulations will be considered disabled without consideration of
>> vocational factors.
>>
>> 4.  If an individual is capable of performing the work he has done in the past,
>> a finding of 'not disabled' must be made.
>>
>> 5.  If an individual's impairment precludes him from performing his past
>> work, other factors including age, education, past work experience, and
>> residual functional capacity must be considered to determine if other work
>> can be performed.

862 F.2d 471, 475 (5th Cir. 1988) (citations and footnotes omitted).  "The claimant bears the

burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth

step." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  A finding that a claimant "is disabled

or not disabled at any point in the five-step process is conclusive and terminates the . . .

analysis." *Id.*

## ADMINISTRATIVE LAW JUDGE'S ANALYSIS

As previously stated, Plaintiff attended hearings before the ALJ on April 4 and August 8, 2012.  On October 9, 2012, after considering the testimony and medical records, the ALJ rendered his decision that Plaintiff was not disabled. ([6] at 21-35.)  At step one of the evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful employment since January 7, 2009, the alleged disability onset date. ([6] at 23.)  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: possible post concussion syndrome and adjustment disorder with depression. ([6] at 23.)  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets of medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. ([6] at 26-28.)

In order to make a determination at step four, the ALJ assessed Plaintiff's Residual Functional Capacity ("RFC").[3]  The ALJ found that Plaintiff has the RFC to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to simple work instructions in a low stress, non-confrontational environment." ([6] at 28.)[4]

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.

---

[2] The ALJ applied the evaluation process set forth in 20 C.F.R. §§ 404.1520(b)-(f) and 416.92(a).

[3] "Residual Functional Capacity" is defined in the Regulations as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. § 416.945.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 CFR §§ 404.1567(b); 416.967(b).

([6] at 33.)  Finally, at step five, the ALJ found that Plaintiff could perform a significant number

of jobs in the national economy.  The ALJ based this conclusion on the testimony from the VE,

Plaintiff's age, education, work experience, and RFC.  The jobs included a salad maker, labeler,

and counter attendant. ([6] at 34.)  Accordingly, the ALJ found that Plaintiff was not disabled.

([6] at 35.)

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether

there is substantial evidence to support the Commissioner's findings and whether the correct

legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382

(5th Cir. 1988).  Substantial evidence is "more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983).   To be substantial, the evidence "must do

more than create a suspicion of the existence of the fact to be established."  *Id*. (citations

omitted).

However, "[a] finding of no substantial evidence is appropriate only if no credible

evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704

(5th Cir. 2001) (internal citations and quotations omitted).  Conflicts in the evidence are for the

Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990).

A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the

Commissioner's, "even if the evidence preponderates against" the Commissioner's decision.

*Harrell*, 862 F.2d at 475.  If the decision is supported by substantial evidence, it is conclusive

and must be affirmed. *Selders,* 914 F.2d at 617.  Moreover, "'[p]rocedural perfection in

administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff has raised two assignments of error: (1) the ALJ committed reversible error in failing to find that the results of Plaintiff's WAIS Test of May 12, 2009, meet or equal the requirements of Listing 12.05C and (2) the ALJ erred in the assessment of Plaintiff's RFC in failing to give proper weight to the opinions of treating and examining physicians and in failing to properly evaluate Plaintiff's pain and other symptoms.

**Issue No. 1:    Whether the ALJ erred in determining that Plaintiff's impairments did not meet or equal the criteria of Listing 12.05C.**

The ALJ determined that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  Plaintiff alleges that the ALJ erred by finding that Plaintiff's impairments did not meet or equal Listing 12.05C.  Listing 12.05 provides:

> *Intellectual disability:* intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e. the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. § 404, subpart P, Appendix 1, 12.05.

8

Plaintiff must establish that his impairment "meet[s] *all* of the specified medical criteria" of Listing 12.05. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Plaintiff has the burden of showing that his impairment satisfies the introductory paragraph's diagnostic description and demonstrating the severity criteria of paragraph C.  Thus, Plaintiff must satisfy not only the requirements of Subsection C–low IQ scores and another physical or mental impairment–but also the requirements of the introductory paragraph–significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period. *Randall v. Astrue*, 570 F.3d 651, 662 (5th Cir. 2009).  This is the Plaintiff's burden, and the criteria in the Listings are "demanding and stringent." *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

As previously mentioned, on May 12, 2009, Dr. Edward Manning administered the Wechsler Abbreviated Scale of Intelligence ("WASI") test, and Plaintiff received a full-scale IQ of 62, verbal IQ of 64, and nonverbal performance IQ of 66. ([6] at 209.)  On May 26, 2012, Dr. Brian Thomas administered the full Wechsler Adult Intelligence Scale-Forth Edition ("WAIS-IV") test, and Plaintiff received a full-scale IQ of 60, verbal comprehension score of 66, and perceptual reasoning score of 69. ([6] at 490.)

As with any medical evidence, the ALJ is not "required to accept a claimant's IQ score. Rather, the ALJ should examine the record to determine whether the proffered score is reliable–that is, consistent with the claimant's daily activities and behavior.  An ALJ may reject IQ scores if they are inconsistent with the record." *McGee v. Astrue*, 291 Fed. App'x. 783, 787 (8th Cir. 2008) (internal citations omitted).  The ALJ found that "[i]f the claimant's IQ scores were considered valid, they would satisfy the first criteria of Section 12.05C.  As mentioned

above, the IQ test results were not described as valid and reliable, and doubt was expressed as to whether the scores were a true indication of his functional level." ([6] at 27.)  The ALJ pointed out that Dr. Thomas stated that Plaintiff's "performance on a performance validity indicator suggests questionable effort and the obtained results may not provide the clearest indication of his functioning." ([6] at 27; 490.)

Plaintiff concedes that Dr. Thomas questioned the validity of the scores from the WAIS-IV test he administered but argues that such does not invalidate the scores from the WASI test administered by Dr. Manning. (Plaintiff's Rebuttal [22] at 5-7.)  The ALJ, however, found that the results of both tests appeared to be an underestimation of Plaintiff's level of functioning. The ALJ found that the other evidence of record, including Plaintiff's history of working without special accommodations and his daily activities, such as caring for himself, cutting grass, running errands, caring for his dogs and horses, hunting, fishing, and cooking, demonstrated that Plaintiff has a higher level of intellectual functioning than was shown by the test results. ([6] at 27.)  The ALJ pointed out that Dr. Katz and Dr. Manning encouraged Plaintiff to resume normal activities. ([6] at 208-15; 227.)  The ALJ also pointed out that Plaintiff attempted to return to work after his accident, but was not rehired. ([6] at 31.)

The doubt surrounding the reliability of the full intelligence test, together with Plaintiff's work history and daily activities, supports the ALJ's decision.  The undersigned recognizes that the record contains evidence favorable to a determination that Plaintiff's impairment meets the criteria of Listing 12.05C.  The record, however, also contains contrary evidence, and the Court may not re-weigh the evidence, as conflicts in the evidence are for the Commissioner, not the courts to resolve. *Selders*, 914 F.2d at 617.

10

Plaintiff also argues that the ALJ erred in finding that Plaintiff did "not have other impairments imposing additional and significant work-related limitations of function, as described in Section 12.05C." ([6] at 27.)  Plaintiff points out that the ALJ, at step two of the evaluation process, found that Plaintiff suffered from the following severe impairments: possible post concussion syndrome and adjustment disorder with depression. ([6] at 23.)  The Fifth Circuit has not yet specifically addressed whether a step two finding that an impairment is severe is equivalent to the "significant work-related limitation of function" requirement of Listing 12.05C.  However, the introduction to Listing 12.00 offers guidance.

> For paragraph [12.05]C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is "severe" impairments(s), as defined in §§ 404.1520(c) and 416.920(c).  If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work.

20 C.F.R. § 404, subpart P, Appendix 1, 12.00A.  Additionally, other circuit courts and district courts within this circuit have held that the use of "significant" in Listing 12.05C is equivalent to the use of "severe" in 20 C.F.R. § 404.1520(c). *See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); *Cook v. Bowen*, 797 F.2d 687, 691 (8th Cir. 1986); *Nieves v. Sec. of Health & Human Servs.*, 775 F.2d 12, 14 (1st Cir. 1985); *Edwards v. Heckler*, 736 F.2d 625, 630 (11th Cir. 1984); *Cargill v. Colvin*, 2013 WL 5526620 (N.D. Tex. Sept. 30, 2013); *Estelle v. Sec. of Health & Human Servs.*, 752 F.Supp. 110, 115 (W.D. La. 1989).

Thus, the ALJ's determination at step two that Plaintiff suffered from the severe impairments of possible post concussion syndrome and adjustment disorder with depression appears to be inconsistent with his determination at step three that Plaintiff did not have other

11

impairments imposing additional and significant work-related limitations of function.  As previously mentioned, however, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler*, 501 F.3d at 448 (quoting *Mays*, 837 F.2d at 1364).  An error may be excused and is not subject to remand where substantial evidence supports the ALJ's decision and the Plaintiff's rights have not been unduly prejudiced by the error.  Any error committed by the ALJ in determining that Plaintiff did not have other impairments imposing additional and significant work-related limitations of function was harmless because the ALJ also determined that Plaintiff did not meet the first requirement of Subsection C–a valid verbal, performance, or full scale IQ of 60 through 70–and because substantial evidence supports this determination.  The ALJ's consideration of Plaintiff's other impairments would not have affected the ALJ's determination regarding Plaintiff's intelligence scores.  Thus, Plaintiff was not prejudiced, and his substantial rights were not affected.

Plaintiff also argues that the ALJ erred by not fully developing the record on medical equivalency.  Plaintiff asserts that the ALJ should have ordered a medical expert to testify regarding the onset of Plaintiff's intellectual impairment after the ALJ ordered a post-hearing mental status evaluation.  According to Plaintiff, medical evidence which supports onset prior to age 22 is the missing finding in this case.

If a claimant does not meet all of the requisite criteria of a listed impairment, medical equivalence may be established by showing that his impairment, or combination of impairments, is equivalent to a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  To do so, the claimant must present medical findings equal in severity to all the criteria for a listed

impairment. *Id*.  A determination that Plaintiff's impairments are equivalent in severity to a listed impairment requires a judgment that the medical findings equal a level of severity that prevents a person from doing any gainful activity. SSR 96-5p.

Subsequent to the first hearing before the ALJ, Plaintiff was sent for a consultative examination by Dr. Thomas, who administered the WAIS-IV intelligence test.  As previously discussed, the ALJ found that "[i]f the claimant's IQ scores were considered valid, they would satisfy the first criteria of Section 12.05C.  As mentioned above, the IQ test results were not described as valid and reliable, and doubt was expressed as to whether the scores were a true indication of his functional level." ([6] at 27.)  Plaintiff argues that the ALJ should have ordered a medical expert to testify after receiving Dr. Thomas's report.

Generally, the decision to consult a medical expert or advisor is a discretionary one. *Haywood v. Sullivan*, 888 F.2d 1463, 1467-68 (5th Cir. 1989).  An ALJ may order opinions from medical experts on the severity of a claimant's impairments if the ALJ feels it is necessary.  An ALJ is required to obtain an updated medical opinion from a medical expert as to the issue of equivalency in the following circumstances:

> When no additional medical evidence is received, but in the opinion of the administrative law judge . . . the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> When additional evidence is received, but in the opinion of the administrative law judge . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p.

The ALJ considered Plaintiff's adaptive functioning, and the ALJ's decision did not turn on the timing of the onset of Plaintiff's adaptive deficits.  Instead, the ALJ determined that

Plaintiff "did not exhibit the adaptive deficits contemplated in the listing and consistent with mental retardation." ([6] at 27.)  The opinion of the ALJ and the evidence of record indicates that the ALJ did not reasonably believe Plaintiff's impairments might be judged equivalent to a listed impairment.  The ALJ pointed to Plaintiff's history of working without special accommodations and his daily activities, such as caring for himself, cutting grass, running errands, caring for his dogs and horses, hunting, fishing, and cooking. ([6] at 27.)[5]  Some of the factors the ALJ cited were in his discussion of Listing 12.04, but the ALJ's opinion fairly addressed the relevant factors and evidence.  The ALJ's determination that Plaintiff's impairments did not medically equal the severity of one of the Listings, together with his discussion of the facts relevant to the issue of adaptive functioning, were sufficient.  The record does not demonstrate that the ALJ was required to get an updated medical opinion on the issue of equivalency. *See*, *e.g.*, *Thomas v. Astrue*, 2009 WL 2777867, at **4-5 (N.D. Tex. Aug. 31, 2009) (finding that the ALJ did not err in failing to obtain an updated medical opinion on the question of equivalence as to the plaintiff's visual impairments even when such issue did not arise until after the state agency medical consultant had reviewed the plaintiff's case).

***Issue No. 2:    Whether the ALJ erred in assessing Plaintiff's Residual Functional Capacity.***

As previously mentioned, the ALJ found that Plaintiff has the RFC to "perform light work as defined in 20 CFR 4040.1567(b) and 416.967(b) except he is limited to simple work instructions in a low stress, non-confrontational environment." ([6] at 28.)  Plaintiff argues that

---

[5] Adaptive functioning encompasses adaptive activities such as "'cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office.'" *Arce v. Barnhart*, 185 Fed. App'x. 437, 438-9 (5th Cir. 2006) (quoting 20 C.F.R. § 12.00(C)(1)).

14

the ALJ erred in assessing his RFC because he failed to give proper weight to the opinions of the medical professionals.[6]  Specifically, Plaintiff takes issue with the ALJ's statement that "Dr. Manning released the claimant to the performance of sedentary and light work for four hours per day in July 2009." ([6] at 31.)  Plaintiff asserts that Dr. Manning never mentioned sedentary or light work.  Indeed, Dr. Edward Manning did not specifically mention sedentary or light work.  Instead, on July 16, 2009, Dr. Howard Katz stated "[a]t this time I am going to release him to light and sedentary activity four hours per day and see how he does.  I see no reason that he cannot perform light and sedentary work as defined by the Department of Labor." ([6] at 227.)

Attributing this particular statement to Dr. Manning, however, amounts to a harmless error as Dr. Manning's findings were consistent with those of Dr. Katz. *See Audler*, 501 F.3d at 448 (quoting *Mays*, 837 F.2d at 1364); *Hughes v. Comm'r of Soc. Sec. Admin.*, 2012 WL 254867, at *3 (E.D. Tex Jan. 27, 2012).  Dr. Katz began treating Plaintiff in early 2009 and referred Plaintiff to Dr. Manning.  On June 18, 2009, Dr. Manning encouraged Plaintiff to resume as many normal activities as possible.  Throughout Dr. Manning's treatment of Plaintiff, he encouraged Plaintiff to begin activities, including home repairs. ([6] at 205-09.)  Dr. Katz noted that "Dr. Manning has also told him to get out and do more, the same as what I recommended.  Dr. Manning said to get out of the house and do as much as possible." ([6] at

---

[6] The ALJ was required to consider the factors set forth at 20 C.F.R. §§ 404.1527(c)(1)-(6) in deciding the weight to give the medical opinions.  These factors include: (1) whether the source of the opinion has examined the plaintiff; (2) whether the source of the opinion has a treatment relationship with the plaintiff, and the nature, extent, and length of the treatment relationship; (3) whether the opinion is supported by relevant evidence; (4) whether the opinion is consistent with the record as a whole; (5) whether the source of the opinion is a specialist; (6) any other factors that support or contradict the opinion (including "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has"). 20 C.F.R. §§ 404.1527(c)(1)-(6).

228.)  Thus, Plaintiff has failed to demonstrate that the ALJ failed to give proper weight to Dr. Manning's opinion.

Plaintiff also argues that the ALJ failed to properly assess the opinion of Dr. Krishan Gupta.  At Plaintiff's request, on January 12, 2011, Dr. Gupta wrote a letter stating that Plaintiff "could not work at the time, when he was unable to do activities of daily living independently, forgot things and had memory impairment."  Dr. Gupta also stated that Plaintiff had a permanent psychiatric impairment.  Dr. Gupta, however, stated that Plaintiff had not reached maximum medical improvement from a psychiatric standpoint. ([6] at 496-499.)  The ALJ correctly noted that Dr. Gupta "seemed to indicate that the claimant's condition was not necessarily permanent, but would require [a] lot of effort over a long period of time for significant progress." ([6] at 33.)

On April 17, 2012, the ALJ wrote Dr. Gupta asking him to provide additional information and clarify whether Plaintiff was unemployable. ([6] at 479-86.)  Dr. Gupta responded on May 17, 2012, and stated that based on a review of his notes from September 2011, the claimant was "doing somewhat better, which means he was improving a little bit, but not much.  He still had memory problems and depressive symptoms.  Considering these facts as presented to me, the patient was unemployable at that time."  Dr. Gupta, however, also stated that the administration of the Minnesota Multiphasic Personality Inventory ("MMPI-2") would be helpful to determine whether Plaintiff was exhibiting symptoms and whether Plaintiff was malingering.  Dr. Gupta informed the ALJ that he had contacted Plaintiff and asked him to come in for further evaluation, but Plaintiff refused. ([6] at 487-88.)

Plaintiff argues that the ALJ erroneously concluded that Dr. Gupta believed Plaintiff was malingering.  The ALJ, however, did not come to such a conclusion.  According to the ALJ, Dr.

16

Gupta conceded that Plaintiff *might* have been malingering and recommended further detailed psychological testing. The ALJ determined that because Dr. Gupta recommended further testing, Dr. Gupta's earlier opinion should not be afforded controlling weight. ([6] at 33.) Dr. Gupta's May 17, 2012, letter demonstrates that he believed further psychological testing would be helpful to determine whether Plaintiff was malingering. The letter indicates that Dr. Gupta believed there was a possibility that Plaintiff was malingering. Thus, Plaintiff failed to demonstrate that the ALJ failed to give proper weight to the opinions of Dr. Gupta.

The record demonstrates the ALJ properly considered the opinions of the medical professionals. The law is clear that the ALJ has the sole responsibility for determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455. Although certain portions of the medical professionals' opinions provide support for Plaintiff's assertions, other portions of the opinions serve as credible evidence supporting the ALJ's determination. The Court may not reweigh the evidence, as conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders,* 914 F.2d at 617.

Plaintiff also argues that the ALJ failed to properly consider Plaintiff's symptoms and his subjective complaints regarding his symptoms. An ALJ should consider whether there is a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms described by the claimant. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. Once an impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities. *Id.* An ALJ should consider a claimant's subjective complaints, but a claimant's own statements regarding his or her pain and

symptoms are not determinative of disability status. 20 C.F.R. § 404.1529.  "The evaluation of a

claimant's subjective symptoms is a task particularly within the province of the ALJ, who has

had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707

F.2d 211, 215 (5th Cir. 1983).

The ALJ was required to make affirmative findings regarding the Plaintiff's subjective

complaints. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).  The ALJ concluded that "the

statements concerning the intensity, persistence and limiting effect of these symptoms were not

credible to the extent they were inconsistent with the above residual functional capacity

assessment." ([6] at 30.)  In making this decision, the ALJ was required to consider the objective

medical evidence and several other specific categories of evidence to ensure that his

determination was clear and specific.  The other categories include:

> (1) the individual's daily activities;
>
> (2) the location, duration, frequency, and intensity of the individual's symptoms;
>
> (3) factors that precipitate and aggravate the symptoms;
>
> (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> (6) any measure other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his back or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p.

The record indicates that the ALJ considered the medical evidence and Plaintiff's

18

testimony at the hearing. The ALJ detailed his reasons for discounting Plaintiff's allegations

regarding his limitations. The ALJ gives an extensive account of Plaintiff's conditions and

treatment. The ALJ concluded that:

> The claimant's cervical and thoracic spine injury, temporomandicular joint dysfunction, and gout are not found to be severe impairment. An impairment is "not severe" if it has no more than a minimal effect on the claimant's ability to work, irrespective of his age, education or work history. *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). MRI's in April 2009 and March 2010 showed some degenerative change without impingement of the spinal cord or nerve roots. The claimant was treated for TMJ with resolution of the dysfunction within twelve months; thus, it does not meet the durational requirement of a severe impairment. His gout was a pre-existing condition of his accident, which did not prevent him from performing strenuous work previously. He actually reported that it had improved since the accident.

([6] at 26.) The ALJ also concluded that:

> The testimony regarding the claimant's residual problems was not entirely credible. While he alleged both physical and mental ailments, he had only brief treatment at the time of his original injury. The injury to his head, if any, was mild. He was diagnosed with a mild concussion or mild head injury. The claimant told Dr. Gupta that a CT scan was done, which was negative. X-rays showed no skull fracture. The claimant was treated for TMJ with resolution of that problem. He did not sustain a herniated disc in his neck or thoracic spine and did not undergo surgery. MRI's of his neck in April 2009 and March 2010 showed disc degeneration but no cord compression. There is a lack of subjective evidence to support residual physical ailments. The claimant continued to be followed for arthritic pain and gout but did not have surgery for these complaints.

([6] at 30) (internal citation omitted).

The ALJ's findings regarding Plaintiff's symptoms are supported by the evidence, and

his reasons are sufficiently articulated in his decision. The record demonstrates that the ALJ

considered the factors listed in SSR 96-7p. The ALJ discussed Plaintiff's symptoms, daily

activities, medication, alleviating measures, and his ability to perform various tasks. The ALJ's

decision is supported by substantial evidence. "Moreover, a factfinder's evaluation of the

credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).  The ALJ found that the medical evidence was more persuasive than Plaintiff's subjective complaints–precisely the kind of determination an ALJ is best positioned to make.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and applies the correct legal standards.  It is, therefore, the recommendation of the undersigned that Plaintiff's Motion for Judgment of the Pleadings [17] be denied, Commissioner's Motion to Affirm [19] be granted, and the denial of benefits be affirmed.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules, any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the Judge, the Magistrate Judge and the opposing party.  The District Judge at the time may accept, reject, or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 22nd day of July, 2015.

s/ Michael T. Parker
United States Magistrate Judge