IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

TIMOTHY SCOTT DICKERSON                                    PLAINTIFF

VS.                             CIVIL ACTION NO: 5:14-cv-9-DCB-MTP

CAROLYN W. COLVIN                                          DEFENDANT
Commissioner of Social Security Administration

<u>ORDER ADOPTING REPORT AND RECOMMENDATION</u>

This cause is before the Court on Magistrate Judge Michael T. Parker's Report and Recommendation of July 22, 2015 **[docket entry no. 23]** and Defendant's Motion to Strike **[docket entry no. 29]**. Therein, Judge Parker recommends that the Plaintiff's Motion for Judgment on the Pleadings **[docket entry no. 17]** be denied, that Defendant's Motion to Affirm **[docket entry no. 19]** be granted, and that the denial of benefits be affirmed. Having reviewed the Report and Recommendations and motion, the plaintiff's objections thereto and the Commissioner's response, and applicable statutory and case law, the Court finds and orders as follows:

I. Factual and Procedural Background

On January 7, 2009, Plaintiff Timothy Scott Dickerson was struck in the head by a piece of falling lumber. He was treated for a concussion and abrasion in his eye. Dickerson was then thirty-five years old and had completed high school, attending special education classes. On January 22, 2009, Dickerson was treated by

1

Dr. Howard Katz, who determined that he suffered from a minor head injury, daily headaches, joint dysfunction, and tennis elbow. On May 12, 2009, Dickerson received a neuropsychological evaluation from Dr. Edward Manning. Dr. Manning determined Dickerson's IQ to be 62.[1] Dr. Manning continued treating Dickerson through July and in June and July, he encouraged Dickerson to resume normal activities. On July 16, 2009, Dr. Katz determined that Dickerson could perform light and sedentary work. Dr. Katz continued treating Dickerson through October, where Dickerson reported continued improvement. However, Dickerson was hospitalized in January 2010 and admitted to a behavioral healthcare center in July 2010 for recurrences of depressive and aggressive behavior. Both times, Dickerson was given medication and responded well. Dickerson was treated by Dr. Krishan Gupta at Brentwood Behavioral Healthcare.

Dickerson applied for disability benefits on November 22, 2010, and applied for supplemental social security income on December 8, 2010. The alleged disability onset date in both claims was January 7, 2009. Plaintiff's claim was denied both initially and after reconsideration. At Dickerson's request, a hearing was held before an Administrative Law Judge ("ALJ") on April 4, 2012. On May 26, 2012, Dickerson underwent a psychological examination by Dr. Brian Thomas. Dr. Thomas retested Dickerson's IQ and determined

---

[1] The complete IQ results are as follows: full-scale IQ of 62, verbal IQ of 64, and nonverbal performance IQ of 66.

it to be 60.[2] Dr. Thomas, however, doubted the accuracy of these scores based on the questionable effort put in by Dickerson. A second hearing was held on August 8, 2012. The ALJ found that Dickerson was not disabled. Dickerson appealed the decision to the Appeals Council, which denied his request for review.

On February 3, 2014, Dickerson filed a complaint, seeking to overturn the decision of the Commissioner and to award benefits, or in the alternative, to remand the case for a new hearing. Judge Parker issued a Report and Recommendation on July 22, 2015.

## II. Magistrate Judge's Findings

Judge Parker found that the decision to deny benefits was supported by substantial evidence. Federal law provides that the decision whether a claimant is disabled is "a five-step sequential procedure." Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (citing 20 C.F.R. § 404.1520(b)-(f) (1988)). At step one, the ALJ determines whether the claimant is "engag[ed] in substantial gainful employment." Id. At step two, the ALJ determines whether the claimant has a "severe impairment." Id. At step three, the ALJ determines whether the claimant "meets or equals a listed impairment." Id. At step four, the ALJ determines whether the claimant can still perform past relevant work. Id. At step five, the ALJ determines whether "other work can be performed" based on

---

[2] The complete IQ results are as follows: full-scale IQ of 60, verbal comprehension score of 66, and perceptual reasoning score of 69.

factors such as "age, education, past work experience, and residual functional capacity." Id. "The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step." Newton v. Apfel, 209 F.3d 448, 453 (5th Cir. 2000). If the ALJ finds that the claimant "is disabled or not disabled at any point in the five-step process" that "terminates the . . . analysis." Id. The decision of the ALJ is reviewed only to determine whether there is substantial evidence to support it and whether the correct legal standards were applied. Hollis v. Bowen, 837 F.2d 1378, 1382 (5th Cir. 1988).

In his complaint, Dickerson

> raised two assignments of error:  (1) the ALJ committed reversible error in failing to find that the results of Plaintiff's [IQ] Test of May 12, 2009, meet or equal the requirements of Listing 12.05C and (2) the ALJ erred in the assessment of Plaintiff's [residual functional capacity] in failing to give proper weight to the opinions of treating and examining physicians and in failing to properly evaluate Plaintiff's pain and other symptoms.

Report & Recommendation ("R&R") 8, ECF No. 23.

As to the first assignment of error, Judge Parker found that

> the ALJ . . . found that the results of both [IQ] tests appeared to be an underestimation of Plaintiff's functioning. The ALJ found that the other evidence of record, including Plaintiff's history of working without special accommodations and his daily activities, such as caring for himself, cutting grass, running errands, caring for his dogs and horses, hunting, fishing, and cooking, demonstrated that Plaintiff has a higher level of intellectual functioning than was shown by the test results.

R&R 10. Judge Parker recognized that there was evidence both

favorable and contrary in the record but stated that conflicts in the evidence were to be resolved by the Commissioner, not the Court. R&R 10 (citing <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990)). Judge Parker further found that the ALJ committed a procedural error in step three but that this error was harmless because it did not affect Dickerson's substantial rights. <u>See Audler v. Astrue</u>, 501 F.3d 446, 448 (5th Cir. 2007) ("Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." (internal quotation marks omitted)). The error did not affect Dickerson's substantial rights because the finding is irrelevant in light of the ALJ's finding related to Dickerson's IQ. Lastly Judge Parker found that the ALJ was not required to order additional medical testimony.

As to the second assignment of error, Judge Parker found that the ALJ found that Dickerson "has the [residual functional capacity] to perform light work as defined in [the regulations] except he is limited to simple work instructions in a low stress, non-confrontational environment." R&R 14 (internal quotation marks omitted). Judge Parker further found that the ALJ erroneously attributed a statement to Dr. Manning when it was made by Dr. Katz; this misattribution "amounts to a harmless error as Dr. Manning's findings were consistent with those of Dr. Katz." R&R 15. Judge Parker also found that the ALJ gave "proper weight to the opinions

of Dr. Gupta" because the ALJ considered Dr. Gupta's medical
opinion in context with Dr. Gupta's recommendation that Dickerson
receive further testing and Dr. Gupta's belief that Dickerson might
be malingering. R&R 17. Lastly, Judge Parker found that "[t]he ALJ
found that the medical evidence was more persuasive than
Plaintiff's subjective complaints." R&R 20. The ALJ found that
Dickeron's other ailments were not severe and that Dickerson's
testimony about his residual problems was not credible.

### III. Plaintiff's Objections

Dickerson timely filed his objections. The Commissioner timely
responded to the objections. Dickerson makes five objections: (1)
the ALJ improperly rejected the IQ test results; (2) the ALJ
improperly found that Dickerson's other impairments were not severe
at step two; (3) Dickerson's schooling in Special Education is
evidence of Pre-Age 22 Onset of subaverage general intellectual
with deficits in adaptive functioning meeting all of the
requirements in Listing 12.05; (4) the ALJ did not adequately
develop the record on medical equivalency by not accepting
Dickerson's special education classes and not acknowledging a five
point measurement error in evaluating IQs; and (5) the ALJ
improperly assessed Dickerson's residual functional capacity.

"[P]arties filing objections must specifically identify those
findings objected to. Frivolous, conclusive or general objections
need not be considered by the district court." Battle v. U.S.

Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987) (quoting Nettles
v. Wainwright, 667 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).
Meritorious objections mandate a de novo review of the Report and
Recommendations. 28 U.S.C. § 636(b)(1) (2009). Merely reurging the
allegations in the complaint or attacking the underlying decision
is insufficient to receive de novo review, however. Those portions
of the report not objected to are reviewed only for plain error.
Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th
Cir. 1996) (en banc), superseded by statute on other grounds, 28
U.S.C. § 636(b)(1).

In general, Dickerson's objections point to perceived flaws in
the ALJ's reasoning, rather than Judge Parker's reasoning, but to
the extent that the objections imply that Judge Parker improperly
reviewed the ALJ's decision, the Court will review the Report and
Recommendation de novo.

As to the first objection, Dickerson does not identify what
part of Judge Parker's reasoning to which he objects. He quotes
from the Report and Recommendation but only a section wherein Judge
Parker quoted a regulation and nothing further. This objection
argues nothing that was not asserted in the original complaint and
briefing for the underlying motions. Therefore, the Court will
review Judge Parker's analysis related to the ALJ's finding related
to the validity of the IQ tests only for plain error. The Court
finds that Judge Parker properly reviewed the evidence relied on by

the ALJ in this case and that there is no plain error. Thus, the first objection is overruled.

As to the second objection, Dickerson impliedly argues that Judge Parker incorrectly found to be harmless the ALJ's error related to the determination of Dickerson's severe impairment. The Court reviews this de novo. Judge Parker found the error to be harmless because Dickerson did not meet the other requirements of Listing 12.05. See Randall v. Astrue, 570 F.3d 651, 660-62 (5th Cir. 2009) (holding that claimants must meet both "the diagnostic description's components and the severity criteria"). Because the ALJ did not find that Dickerson met the diagnostic component of mental retardation, it is irrelevant whether he meets the severe impairment requirement. And the Court has already affirmed Judge Parker's analysis of the ALJ's finding related to the validity of the IQ test results. Thus, after de novo review, the Court overrules this objection. Judge Parker correctly found the ALJ's error to be harmless.

As to the third objection, Dickerson impliedly argues that Judge Parker improperly reviewed the ALJ's application of a legal standard, meriting de novo review. Judge Parker acknowledged that there was evidence both favorable and contrary to find that Dickerson met the criteria of Listing 12.05C, but he went on to state that it is not the job of the Courts to reweigh the evidence on review of an administrative decision. See Selders, 914 F.2d at

8

617. Dickerson also argues that Judge Parker found the ALJ's weighing of the evidence here to be a procedural error rather than a substantive error. But Judge Parker did not, in fact, find that the ALJ had committed any error in weighing this evidence. Therefore, the Court will overrule this objection.

As to the fourth objection, Dickerson largely reasserts a previous argument that the ALJ did not fully develop the medical record in this case, but he also argues that a different legal standard for viewing the IQ test results should have been used and that the ALJ improperly discounted Dickerson's special education as medically equivalent evidence of his impairment before age twenty-two. Judge Parker discussed in the Report and Recommendation the ALJ's development of the record, and this portion will be reviewed for plain error. But insofar as the objection relates to special education and medical equivalency and the standard for weighing IQ test results, the Court will review de novo. The Court finds no error in the analysis of the duty to develop the medical record.

Further, the Court finds that Judge Parker properly reviewed the ALJ's analysis of medical equivalence and the weight afforded to an actual IQ score. Judge Parker found that

> [t]he ALJ considered Plaintiff's adaptive functioning, and the ALJ's decision did not turn on the timing of the onset of Plaintiff's adaptive deficits. Instead, the ALJ determined that Plaintiff "did not exhibit the adaptive deficits contemplated in the listing and consistent with mental retardation." The opinion of the ALJ and the evidence of record indicates that the ALJ did not reasonably believe Plaintiff's impairments might be

judged equivalent to a listed impairment.

R&R 13-14 (internal citations omitted). The Court agrees with Judge Parker's analysis; Dickerson's enrollment in special education is irrelevant because he does not meet the requirements of intellectual disability.

As to the IQ test results, Dickerson argues that there is a five point margin of error in measuring IQ so that an actual IQ of 60 could score anywhere between 55 and 65. If the ALJ had adjusted Dickerson's IQ score downward by five points, then Dickerson would have met the requirements of Listing 12.05B by having an IQ of less than 60. The Commissioner argues that Dickerson "has not offered any reason why the Court should not assume that the Commissioner, in promulgating the regulation, was aware of the standard margin of error and could have incorporated or referenced it if the stated numbers were to be given an expansive reading." Resp. 7, ECF No. 27. Although it appears that the Fifth Circuit has not examined this question, other Circuits have, and they have found that an ALJ may rely on the plain language of the regulation and not provide the IQ results any flexibility. See, e.g., Burns v. Barnhart, 312 F.3d 113, 125 (3d Cir. 2002); Dover v. Apfel, 203 F.3d 834 (10th Cir. 2000) (unpublished); Anderson v. Sullivan, 925 F.2d 220, 223 (7th Cir. 1991). More recently, however, the Supreme Court has recognized that "IQ test scores should be read not as a single fixed number but as a range" and that "[i]ntellectual disability is

a condition, not a number." Hall v. Florida, 134 S. Ct. 1986, 1995, 2001 (2014). But the Supreme Court issued this opinion in the death penalty context. Id., at 2001. ("But in using these scores to assess a defendant's eligibility for the death penalty, a State must afford these test scores the same studied skepticism that those who design and use the tests do, and understand that an IQ test score represents a range rather than a fixed number. A state that ignores the inherent imprecision of these tests risks executing a person who suffers from intellectual disability."). And the Court can only find one district court opinion citing to Hall in a social security benefits context. See Davis ex rel. J.E.C. v. Colvin, No. 14C104, 2014 WL 4954470, at *9 n.11 (E.D. Wis. Oct. 2, 2014) (noting "that IQ test scores should be read not as a single fixed number but as a range" (quoting Hall, 134 S. Ct. at 1995)). While an IQ score may be better understood as a range, the Court is unwilling to extend the holding in Hall to this context without further guidance; the same rights are not at stake. Further, Judge Parker found that the ALJ believed the test results to underestimate Dickerson's IQ. Therefore, the Court will overrule this objection.

As to the fifth objection, Dickerson does not identify what part of Judge Parker's reasoning to which he objects. He quotes from the Report and Recommendation but only where Judge Parker states what Dickerson's second assignment of error is and nothing

further. This objection argues nothing that was not asserted in the original complaint and briefing for the underlying motions. Therefore, the Court will review Judge Parker's analysis related to the ALJ's finding related to Dickerson's residual functional capacity only for plain error. The Court finds that Judge Parker properly reviewed the evidence relied on by the ALJ and that there is no plain error. Thus, the fifth objection is overruled.

## IV. Motion to Strike

The Commissioner moved to strike Dickerson's reply to her response to Dickerson's objections arguing that it was "filed without authority" because "there is no provision in the Federal Rules of Civil Procedure or in the Local Uniform Civil Rules to allow the Plaintiff to reply to Defendant's response to Plaintiff's objections to the Report and Recommendation. . . ." Mot. Strike 1, ECF No. 29. While it is true that Local Rule 72(a)(3) does not provide for a reply in this situation, the Court sees no difference here between this and a surreply. Courts in this district occasionally consider surrebuttals not properly before them in reaching their decisions. See e.g., Pierce v. The Clarion Ledger, 433 F. Supp. 2d 754, 769 n.7 (S.D. Miss. 2006); Bradshaw v. City of Gulfport, No. 1:09cv743, 2010 WL 4192879, at *2 (S.D. Miss. Oct. 12, 2010); Okunoren v. United States, No. 3:08cv178, 2009 WL 1395471, at *2 (S.D. Miss. May 18, 2009). Leave to file a surrebuttal should be granted when judicial experience and common

sense deem it appropriate. While the Court agrees that leave of court should have been requested by Dickerson prior to filing his reply, the Court can see no reason to exclude his reply in this case. Therefore, the motion to strike will be denied.

V. Order

Having conducted a <u>de novo</u> review of the portions of the Report and Recommendations objected to and reviewed the remainder for plain error, the Court is satisfied that Judge Parker has issued a thorough opinion. Accordingly,

IT IS HEREBY ORDERED that the Magistrate Judge's Report and Recommendations is hereby ADOPTED.

FURTHER ORDERED that the Plaintiff's Objections to the Magistrate Judge's Report and Recommendations are OVERRULED.

FURTHER ORDERED that the Motion for Judgment on the Pleadings is DENIED.

FURTHER ORDERED that the Motion to Affirm the Commissioner's Decision is GRANTED.

FURTHER ORDERED that the Motion to Strike is DENIED.

A final judgment in accordance with Federal Rule of Civil Procedure 58 will follow.

SO ORDERED this the 11th day of September 2015.

                              /s/ David Bramlette
                    UNITED STATES DISTRICT JUDGE